UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KERRY ZIDANICH,

                        Plaintiff,

                                                                                                              Case # 16-CV-87-FPG

v.

                                                                                                           DECISION AND ORDER

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                        Defendant.
_____

        Kerry Zidanich ("Zidanich" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1.  This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

        Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  ECF Nos. 7, 8.  For the reasons stated below, this Court finds that the Commissioner's decision is not in accordance with the applicable legal standards. Accordingly, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

        On November 8, 2012, Zidanich protectively applied for DIB and SSI with the Social Security Administration ("the SSA").  Tr.[1] 211-18.  She alleged that she had been disabled since June 26, 2012, due to a stroke, right side paralysis, right shoulder dysfunction, obesity, anxiety, and cognitive deficits.  Tr. 226.  After her applications were denied at the initial administrative

---

[1]     References to "Tr." are to the administrative record in this matter.

1

level, a hearing and supplemental hearing were held before Administrative Law Judge Eric L. Glazer ("the ALJ") on May 21 and September 16, 2014, in which the ALJ considered Zidanich's applications *de novo*. Tr. 32-79, 80-110. Zidanich appeared at the hearings with her attorney and testified. *Id.* Timothy P. Janikowski, a vocational expert ("VE"), appeared and testified at the supplemental hearing. Tr. 92-96, 102-09. On October 27, 2014, the ALJ issued a decision finding that Zidanich was not disabled within the meaning of the Act. Tr. 10-26. On December 5, 2015, that decision became the Commissioner's final decision when the Appeals Council denied Zidanich's request for review. Tr. 1-3. Thereafter, Zidanich commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.      Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f). The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate

that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ's decision analyzed Zidanich's claim for benefits under the process described above. At step one, the ALJ found that Zidanich had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Zidanich has the following severe impairments: history of cerebral vascular accident with latent effects of cerebrovascular disease, hypertension, and obesity. Tr. 12-15. At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 15-16.

Next, the ALJ determined that Zidanich retained the RFC to perform less than a full range of light work.[2] Tr. 16-24. Specifically, the ALJ found that Zidanich can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently, and that she can sit, stand, or walk for six hours in an eight-hour workday. Tr. 16. The ALJ also found that Zidanich can frequently reach overhead and in all other directions with her bilateral upper extremities. *Id.* She can frequently finger with her left hand but only occasionally with her right dominant hand. *Id.* The ALJ determined that Zidanich can occasionally climb ramps, stairs, ladders, and scaffolds. *Id.*

---

[2]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

She can remember and carry out instructions, but is limited to performing simple, routine, and repetitive tasks. *Id.* She can use judgment and deal with changes in a work setting, but is limited to making simple work-related decisions. *Id.* The ALJ found that Zidanich does not demonstrate a propensity to be off task excessively and that normal work breaks would accommodate any need for time off. *Id.*

At step four, the ALJ found that this RFC allows Zidanich to perform her past relevant work as an autoclave operator-sterilizer. Tr. 24. The ALJ continued the disability analysis, however, and made alternate findings at step five. *Id.* At step five, the ALJ relied on the VE's testimony and found that Zidanich is capable of making an adjustment to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 25-26. Specifically, the VE testified that Zidanich could work as a cashier, office helper, and counter clerk. Tr. 25-26. Accordingly, the ALJ concluded that Zidanich was not "disabled" under the Act. Tr. 26.

**II.    Analysis**

Zidanich argues that remand is required because the ALJ failed to properly consider whether it was medically necessary for her to use a cane.[3] ECF No. 7-1, at 16-18; ECF No. 10, at 3-5. Zidanich asserts that, as a result of this failure, the RFC assessment is not supported by substantial evidence because it does not provide for cane use or include any balancing limitations. ECF No. 7-1, at 18. The Commissioner maintains that the ALJ did not err and that the RFC assessment is supported by substantial evidence because the record did not establish that it was medically necessary for Zidanich to use a cane. ECF No. 8-1, at 13-15.

---

[3]    Zidanich advances other arguments that she believes warrant reversal of the Commissioner's decision. ECF No. 7-1, at 18-27; ECF No. 10, at 5-9. Because this Court disposes of this matter based on the ALJ's failure to consider whether Zidanich needed to use a cane, however, those arguments need not be reached.

Social Security Ruling ("SSR") 96-9P provides that

> [t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). The need to use a cane does not automatically limit a claimant to sedentary work or render him or her disabled. *Magby v Colvin*, No. 15-CV-285-FPG, 2016 WL 4585903, at *2 (W.D.N.Y. Sept. 2, 2016). In fact, courts have affirmed decisions where the ALJ found that the claimant could perform a reduced range of light work with the use of a cane. *See Rice v. Comm'r of Soc. Sec*, 114 F. Supp. 3d 98, 107 (W.D.N.Y. 2015); *Koszuta v. Colvin*, No. 14-CV-694-JTC, 2016 WL 231383, at *1 (W.D.N.Y. Jan 19, 2016), *vacated in part on other grounds*, 2016 WL 824445 (W.D.N.Y. Mar. 3, 2016). In evaluating whether it is medically necessary for the claimant to use a cane, the ALJ "must always consider the particular facts of a case." SSR 96-9P, 1996 WL 374185, at *7; *Wright v. Colvin*, No. 6:13-cv-06585 (MAT), 2015 WL 4600287, at *5 (W.D.N.Y. July 29, 2015) (the ALJ must "properly consider the medical necessity of Plaintiff using a cane").

Here, consultative examiner Hongbiao Liu, M.D. ("Dr. Liu") noted that Zidanich "uses a cane occasionally" because it "was prescribed by [her treating physician] to keep the balance." Tr. 338. Dr. Liu then opined that in his "medical opinion," the cane is "medically necessary" for Zidanich to "keep her balance." *Id.* This opinion satisfies the requirements of SSR 96-9P because it (1) establishes that a cane is necessary to aid in walking or standing and (2) describes that the cane is needed for balance. *See* SSR 96-9P, 1996 WL 374185, at *7. Dr. Liu's treatment notes also indicate that Zidanich walked slowly and with a limp. Tr. 338.

In his decision, the ALJ gave "significant weight" to Dr. Liu's opinion, yet he never mentioned that Dr. Liu opined that it was medically necessary for Zidanich to use a cane and he did not analyze how this might erode the occupational base for light work. Tr. 23. The ALJ merely noted that, Zidanich "use[d] a cane, purportedly for balance" at her examination with Dr. Liu. Tr. 19. This was improper because "[a]lthough the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, he cannot pick and choose evidence that supports a particular conclusion. His failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (internal quotation marks and citations omitted); *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."); *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *17 (W.D.N.Y. Jan. 13, 2015) (stating that "cherry-picking" of evidence is improper).

Zidanich's cane use and gait abnormality are also evident in other parts of the record. At her hearing, Zidanich testified that she uses a cane when she knows she will be on her feet "longer than expected" because walking gives her low back and hip pain. Tr. 57. She testified that one of her doctors prescribed the cane to her.[4] *Id.* Zidanich also testified that she limps, has weakness in her right leg, knee pain, and a "drop foot." Tr. 42, 56.

The medical records from Esfandiar Mafi, M.D. ("Dr. Mafi"), Zidanich's treating physician, also indicate that she must use a cane while "engaging in occasional

---

[4] It is important to note that SSR 96-9P "does not mandate that the hand-held assistive device be *prescribed* to be considered medically necessary." *Hoke v. Colvin*, No. 1:14-CV-0663 (GTS/CFH), 2015 WL 3901807, at *14 (N.D.N.Y. June 25, 2015) (emphasis added). It "require[s] specific medical documentation establishing its need and the circumstances surrounding its need." *Id.* Thus, the Commissioner's argument that the ALJ did not err because "the evidence does not contain medical documentation that the cane was actually prescribed by [Zidanich's treating physician]" is unpersuasive. ECF No. 8-1, at 14.

standing/walking." Tr. 329. Dr. Mafi noted that Zidanich had balance problems, poor coordination, and unstable walking. Tr. 328.

Furthermore, the treatment notes of consultative examiner Nikita Dave, M.D. ("Dr. Dave") demonstrate that Zidanich had gait issues, although she did not use a cane at that appointment (which was more than six months before her appointment with Dr. Liu). Tr. 288-92. Dr. Dave noted that Zidanich's gait was "remarkable for right lower extremity stiffness and posturing," and that she had "difficulty clearing the floor secondary to lack of swing in the right lower extremity due to the possible spasticity." Tr. 289. She also indicated that Zidanich had a "poor toe gait" and appeared "clumsy." Tr. 290.

Although the ALJ found Zidanich capable of doing less than the full range of light work, he did not place any additional limitations on the amount she was required to lift or the frequency with which she was required to perform lifting activities. The regulations provide that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A job may also be in this category "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* Light work also requires the "use of arms and hands to grasp and hold and turn objects." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983). If Zidanich needs to use a cane for support and balance, it means that at least one hand is not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal. *See Wright*, 2015 WL 4600287, at *5.

The ALJ also failed to comply with the suggestion in SSR 96-9P that an ALJ should consult a VE to determine whether an individual who needs to use a cane can adjust to other work. SSR 96-9p, 1996 WL 374185, at *7. At the supplemental hearing, the ALJ posed a

hypothetical question to the VE without any caveat that the individual would need to use a cane for balance. Tr. 94-95; *cf. Magby*, 2016 WL 4585903, at *3 (finding that the ALJ did not err because he incorporated the plaintiff's cane use into the RFC assessment and specifically asked the VE whether the plaintiff could use a cane and adjust to other work).

Because the ALJ failed to properly consider whether it was medically necessary for Zidanich to use a cane, the RFC assessment does not include all of Zidanich's limitations. Accordingly, this Court finds that the RFC assessment is not supported by substantial evidence and that remand is required.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 27, 2016
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court